216 N.J. Super. 359 (1987)
523 A.2d 1076
ROY M. BLEW AND DAVE'S FRIENDLY TEXACO, PLAINTIFFS,
v.
BRIND LEASING, MCDONNELL DOUGLAS TRUCK SERVICES (FORMERLY KNOWN AS BRIND LEASING), HARTFORD INSURANCE COMPANY, BAYARD SALES CORPORATION, PENNSYLVANIA MANUFACTURER'S ASSOCIATION INSURANCE COMPANY AND FIREMAN'S FUND INSURANCE COMPANIES, DEFENDANTS-RESPONDENTS, AND BRIND LEASING, MCDONNELL DOUGLAS TRUCK SERVICES (FORMERLY KNOWN AS BRIND LEASING), AND HARTFORD INSURANCE CO., THIRD-PARTY PLAINTIFFS-RESPONDENTS,
v.
TERI ANN SITTON AND NEW JERSEY PROPERTY-LIABILITY GUARANTEE ASSOC., THIRD-PARTY DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued January 6, 1987.
Decided January 29, 1987.
*360 Before Judges O'BRIEN and LANDAU.
Donald K. Greer argued the cause for appellant, third-party defendant New Jersey Property-Liability Guarantee Association (Richard A. Amdur, attorney; Edward M. Henfey, on the brief).
Michael F. O'Neill argued the cause for respondent, third-party plaintiff Hartford Insurance Company (Purcell, Ries, Shannon & Mulcahy, attorneys; Michael F. O'Neill, on the brief).
The opinion of the court was delivered by LANDAU, J.S.C. (t/a).
This is an appeal by the New Jersey Property-Liability Guarantee Association (Association) from an order of the Superior Court, Law Division, which determined that the $300,000 limitation as to each covered claim referred to in N.J.S.A. 17:30A-8 a.(1) remains subject to actual policy limits of the insolvent carrier until the statutory dollar maximum is exhausted. We affirm.

FACTS
Roy Blew, an employee of Dave's Texaco, was driving a tow truck owned by Brind Leasing when it rear-ended and injured Teri Sitton in 1983.
Blew and Dave's Texaco were insured for $500,000 by Ideal Insurance Co., now insolvent and statutorily succeeded by the *361 Association under the New Jersey Property-Liability Insurance Guarantee Association Act N.J.S.A. 17:30A-1, et seq. Brind was insured for $1,000,000 by Hartford Insurance (Hartford).
Sitton's liability claims have been settled for a total sum of $300,000 payable by Hartford and the Association, after the trial court determined that each must provide primary liability coverage for Blew and Dave's Texaco. The latter determination is not in dispute. Rather, Hartford contends that the responsibility of the Association and Hartford under the settlement should be in the proportion that their respective policy limits bear to total primary coverage. So construed, Hartford would pay 2/3 (i.e., $1,000,000/$1,500,000) of the $300,000 settlement.
The Association says its pro rata share should be computed based upon its maximum statutory exposure of $300,000, provided under N.J.S.A. 17:30A-8 a(1), rather than the Ideal policy limit of $500,000. Thus, it would be responsible only for 3/13 (i.e., $300,000/$1,300,000) of the settlement.
The Association correctly notes that the question of what amount a pro rata share should be based on when the policy limits exceed the statutory maximum, is a matter of first impression.
Although the Association refers to this as a "perplexing question" we agree with the respondent Hartford that the statute is clear and unambiguous, and resolves this issue. N.J.S.A. 17:30A-8 a(2) provides that the Association shall "be deemed the insurer to the extent of its obligation on the covered claims and to such extent shall have all rights, duties, and obligations of the insolvent insurer as if the insurer had not become insolvent." (Emphasis supplied)
A "covered claim" is defined in N.J.S.A. 17:30A-5 d as an "unpaid claim ... which arises out of and is within the coverage, *362 and not in excess of the applicable limits of an insurance policy to which this act applies ..." (Emphasis supplied)
N.J.S.A. 17:30A-8 a(1) makes clear that the Association is "obligated to the extent of the covered claims against an insolvent insurer ... but such obligation shall include only that amount of each covered claim which is less than $300,000 ..." (Emphasis supplied)
Thus, by its definition of "covered claim" in Section 5 d and the incorporation of that phrase into Sections 8 a(1) and (2), the Legislature has unambiguously provided a system where the Association steps into the shoes of the insolvent carrier as to claims within the coverage and limits of its policy of insurance, subject to the statutory $300,000 maximum.
No statutory language suggests the contrary; rather, the legislation clearly recognizes the distinction between the $300,000 limitation on covered claims, and the limits of liability in the policy. Had the Legislature wished to define the limitation on covered claims in terms of a policy limit, it could have done so.
Skandia America Reinsurance Corp. v. Schenck, 441 F. Supp. 715 (S.D.N.Y. 1977), cited by the Association, does not support its position. In fact the court there concluded that the New Jersey Guaranty Act renders the Association's "obligation to pay co-extensive with that of the insolvent." Skandia, at 727.
We hold that inasmuch as the amount of the Association's obligation under the settlement (covered claim) does not exceed the statutory limit, and is not in excess of the applicable limits of the Ideal policy, the judgment of the trial judge should be affirmed.
We note that a contrary result would penalize solvent insurers which share primary coverage with insolvent carriers, instead of fostering the statutory goal of spreading the cost of insolvency through the Association vehicle.
Affirmed.