**Betty A. FONTENOT,
Plaintiff–Appellant,**

v.

**George E. HAIGHT and Modular
Vehicle, Inc., a Colorado
corporation, Defendants,**

v.

**WESTERN GUARANTEE FUND, an insurance fund set up under the laws of
the State of Colorado, Garnishee–Appellee.**

No. 87CA0447.

Colorado Court of Appeals,
Div. IV.

Oct. 13, 1988.

Lloyd C. Kordick Colorado Springs, for plaintiff-appellant.

No appearance for defendants.

Dale L. Holst, P.C., Dale L. Holst, Colorado Springs, for garnishee-appellee.

BABCOCK, Judge.

Betty Fontenot (Fontenot) appeals the trial court's judgment in favor of Western Guaranty Fund (the Fund) on her traverse of answers to two of three writs of garnishment that, if granted, would have required the Fund to pay Fontenot $50,000 on each of the three writs. We affirm.

George E. Haight (Haight) was an employee of Modular Vehicle, Inc., acting in the scope of his employment when the vehicle he was driving collided with Fontenot's car, injuring her. In Fontenot's negligence action, a jury verdict was entered against Haight, based on his negligence, and against Modular Vehicle, based on *respondeat superior,* jointly and severally, in the amount of $145,615.31.

At the time of the accident, Modular Vehicle had comprehensive general liability insurance with Iowa National Mutual Insurance Co. (Iowa National). The insurance policy provided coverage for the accident with limits of $250,000 per person and $500,000 per accident. Modular Vehicle also then had an umbrella excess liability insurance policy issued by Iowa National. The umbrella policy provided that in the

event the underlying insurance limits on the first policy were exhausted, the umbrella policy would continue in force to a maximum of $3,000,000.

Prior to trial, Iowa National was declared insolvent. After judgment, because of that insolvency, the Fund, a non-profit, unincorporated legal entity, authorized and created by the Colorado Insurance Guaranty Association Act, § 10–4–501, et seq., C.R.S. (1987 Repl.Vol. 4A), (the Act) became involved as garnishee when it was served three writs of garnishment.

The first writ of garnishment was for monies the Fund owed concerning the insolvency of Iowa National on that company's policy insuring Modular Vehicle, Inc. The second writ demanded monies allegedly held by the Fund on behalf of defendant Haight. The third writ concerned monies claimed due under the umbrella policy.

Because of Iowa National's insolvency, the Fund answered "yes" as to whether it owed the monies as alleged in the first writ and paid Fontenot $50,000. The Fund answered "No" as to whether it owed the monies as alleged in the second and third writs of garnishment.

Fontenot traversed the answers on the second and third writs, and after a hearing thereon, the trial court ruled that the Fund did not owe Fontenot additional money.

Fontenot contends that the trial court erred in not ordering the Fund to pay $50,-000 on the writ of garnishment issued for monies assertedly held on behalf of Haight because of Iowa National's insolvency. She argues that Haight has a separate and distinct "covered claim" under the Act. We disagree.

Section 10–4–503(4), C.R.S. (1987 Repl. Vol. 4) defines "covered claim" as an "unpaid claim ... which arises out of and is *within the coverage* and not in excess of the applicable limits of *an insurance policy* ... issued by an insurer if such insurer becomes an insolvent insurer...." (emphasis added) Thus, a "covered claim" is a claim that would have been covered by insurer's policy but for its insolvency. *See Arizona Property & Casualty Insurance*

*Guaranty Fund v. Helme*, 153 Ariz. 129, 735 P.2d 451 (1987).

The underlying insurance policy in this case provides coverage for its insureds with a limit of liability of $250,000 per person and $500,000 per accident. The pertinent provision states:

" 'Coverage A–Bodily injury liability.' The company will pay on behalf of the insured all sums which the insured becomes *legally obligated to pay as damages because of bodily injury ...* to which this insurance applies, caused by *an occurrence....*" (emphasis added)

The policy further provides that:

"Regardless of the number of (1) insureds under this policy, (2) persons or organizations who sustain bodily injury or property damage, or (3) claims made or suits brought on account of bodily injury or property damage, the company's liability is limited as follows:

"COVERAGE A—The total liability of the company for all damages, including damages for care and loss of services, because of bodily injury sustained by one or more persons *as the result of any one occurrence* shall not exceed the limit of bodily injury liability stated in the schedule as applicable to *'each occurrence....'*" (emphasis added)

Here, the accident was the only "occurrence." Fontenot is the only person who suffered bodily injury arising out of "the occurrence." Accordingly, the insolvent insurance company would have been legally obligated to pay Fontenot's damages pursuant to the policy. Because Fontenot's unpaid judgment against Modular Vehicle and Haight "arises out of" and is "within the coverage" of the insurance policy, it is the "covered claim." Section 10–4–503(4), C.R.S. (1987 Repl.Vol. 4A).

Section 10–4–508(1)(a), C.R.S. (1987 Repl. Vol. 4A) describes the Fund's obligation to pay covered claims as follows:

"(1) The Association shall:

(a) Be obligated to the extent of the covered claims existing prior to a determination of insolvency ... but such obligation *shall include only that amount of each covered claim which is in excess of one*

*hundred dollars and is less than fifty thousand dollars...." (emphasis added)*

Pursuant to § 10–4–508(1)(b), C.R.S. (1987 Repl.Vol. 4A), the Fund is deemed to "be the insurer *to the extent of its obligation on the covered claims* and to such extent shall have all the rights, duties, and obligations of the insolvent insurer as if the insurer had not become insolvent." (emphasis added)

■ The statutory scheme provides that the Association "steps into the shoes" of the insolvent insurance company as to claims within the coverage and limits of its insurance policy, subject to the statutory $50,000 maximum. The statutory language places the Fund in the stead of the insurer to the extent that the Fund itself is statutorily obligated on the covered claim. *See Arizona Property & Casualty Insurance Guaranty Fund v. Ueki,* 150 Ariz. 451, 724 P.2d 70 (App.1986); *Blew v. Brind Leasing,* 216 N.J.Super. 359, 523 A.2d 1076 (1987). Thus, the general assembly has distinguished between the $50,000 limitation on "covered claim" and the limits of liability in the insurance policy. *Blew v. Brind Leasing, supra; Arizona Property & Casualty Insurance Guaranty Fund v. Ueki, supra.*

■ The only "covered claim" in this case, then, is Fontenot's unpaid judgment against Modular Vehicle and Haight, subject to the statutory $50,000 maximum. Because the Act does not provide coverage for 100% of a claim against an insolvent insurer, *see, Arizona Property & Casualty Insurance Guaranty Fund v. Ueki, supra,* and because there is only one "covered claim" subject to the statutory $50,000 maximum, the trial court did not err in entering judgment for the Fund on Fontenot's traverse to the second writ of garnishment.

■ Fontenot also contends that the trial court erred in not entering judgment against the Fund on her claim under the umbrella policy. She maintains that the two separate insurance policies gave rise to two "covered claims." We disagree.

Prior to insolvency, the total liability of Iowa National under the underlying policy would have been $250,000 per person and $500,000 per accident. Fontenot obtained a $145,615.31 judgment, which is within the coverage and not in excess of the applicable policy limits. Because Fontenot's judgment did not exhaust the underlying policy limit, she does not have a claim under the umbrella policy for which the Fund is liable. *See Garmany v. Mission Insurance Co.,* 785 F.2d 941 (11th Cir.1986). For us to hold otherwise would require us to rewrite the insurance contract.

JUDGMENT AFFIRMED.

HUME and NEY, JJ., concur.